UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 06-10059-GAO

MANUEL ANTONIO PIMENTAL,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.

OPINION AND ORDER
January 8, 2010

O'TOOLE, D.J.

## I.      Background

The petitioner, Manuel Antonio Pimental, was convicted of drug offenses in state court in January 1992 and April 1994, for which he received a 7–10 year sentence and a 15–20 year sentence, respectively. He was stripped of his lawful permanent resident status and deported after serving some portion of each sentence.

On July 29, 2005, he was arrested in Weymouth, Massachusetts for possession of cocaine with intent to distribute. Immigrations and Customs Enforcement ("ICE") determined that he had illegally reentered the United States, deportation proceedings were re-initiated, and on October 11, 2005, an Immigration Judge issued a Decision/Order to Reinstate the Prior Order of Deportation.

On March 1, 2006, he was indicted by a federal grand jury for Illegal Re-entry by a Deported Alien in violation of 8 U.S.C. § 1326(a) and (b)(2). On May 10, 2006, he pled guilty to this charge, and on August 31, 2006, this Court sentenced him to seventy months imprisonment

to run concurrently with the balance of the state sentence he was presently serving. The judgment entered that same day stated that the sentence was "to run concurrently with the balance of the current state commitment." <u>United States v. Pimental</u>, No. 06-10059, at 3 (D. Mass. Aug. 31, 2006) (Judgment) (dkt. no. 14). An amended judgment was filed the following day which clarified that the sentence was "to run concurrently with the sentence imposed in Suffolk Superior Court Docket #93-11098, currently being served at the Massachusetts Correctional Institution and Cedar Junction." <u>United States v. Pimental</u>, No. 06-10059, at 2 (D. Mass. Sept. 1, 2006) (Amended Judgment) (dkt. no. 15).

The petitioner appealed his sentence and was appointed new counsel for appellate proceedings. Appellate counsel filed an <u>Anders</u> brief on June 7, 2007, seeking to withdraw from the case because no non-frivolous appealable issues existed. <u>See</u> <u>Anders v. California</u>, 386 U.S. 738, 744 (1967). The First Circuit agreed, granted appellate counsel's motion to withdraw, and summarily affirmed the judgment on August 28, 2007.

Pimental has now filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. His petition sets forth three claims of ineffective assistance of counsel. He argues that his trial counsel was ineffective because he advised him to plead guilty without challenging the validity of the prior deportation proceedings, did not argue that "fast-track" disparity supported a lower sentence, and did not move to correct an alleged error in the subsequent judgment. He claims that his appellate counsel was ineffective because she did not petition the Supreme Court for certiorari and did not supplement her <u>Anders</u> brief following the Supreme Court's decision in <u>Rita v. United States</u>, 551 U.S. 338 (2007). For the reasons discussed below, all petitioner's claims lack merit.

## II.    Discussion

A petitioner under 28 U.S.C. § 2255 bears the burden of establishing the need for relief. David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). Section 2255 provides for relief if the petitioner's sentence was imposed in violation of the Constitution or laws of the United States or by a court that lacked jurisdiction, or exceeded the statutory maximum, or "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

A petitioner claiming ineffective assistance of counsel in violation of the Sixth Amendment must show that "counsel's representation fell below an objective standard of reasonableness," and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984). There is a "'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight. Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689). "It is only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it,'" that the first part of the Strickland inquiry is satisfied. Id. (quoting Strickland, 466 U.S. at 693–94). As to the prejudice inquiry, a "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### A.    Trial Counsel's Advice to Plead Guilty

Pimental was indicted on March 1, 2006, and entered a plea of not guilty on March 14, 2006. He changed his plea on May 10, 2006 after consulting with counsel. The petitioner now claims that counsel performed unreasonably when he advised him to plead guilty "in a rush" without investigating the prior deportation proceedings, which he claims were fundamentally

unfair and deprived him of the opportunity for judicial review. (Mot. Pursuant to 28 U.S.C. §
2255, at 5.)

Section 1326(d) of Title 8 is captioned "Limitation on collateral attack on underlying
deportation order" and provides:

> In a criminal proceeding under this section, an alien may not challenge the
> validity of the deportation order described in subsection (a)(1) of this section or
> subsection (b) of this section unless the alien demonstrates that—
>
> > (1) the alien exhausted any administrative remedies that may have been
> > available to seek relief against the order;
> >
> > (2) the deportation proceedings at which the order was issued improperly
> > deprived the alien of the opportunity for judicial review; and
> >
> > (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The conditions are conjunctive. Section 1326(d) thus provides an exception
to the charge of re-entering the United States after being deported contained in § 1326(a). See
United States v. DeLeon, 444 F.3d 41, 44 (1st Cir. 2006).

The petitioner does not contend that he exhausted his available administrative remedies
with respect to the deportation order as required by § 1326(d)(1). The government stated at the
hearing on Pimental's change of plea that after an immigration judge had entered the order of
deportation, Pimental filed a notice of appeal but withdrew the appeal several months later.
(Gov't's Resp. to Pet'r's § 2255 Mot. and Req. for Summ. Dismissal Ex. 4, at 11:17–20.) The
petitioner has not suggested otherwise. His failure to have exhausted his administrative remedies
would have doomed an argument under § 1326(d) by counsel. See DeLeon, 444 F.3d at 50 n.7
("[I]t is quite clear that Congress has, particularly in the immigration laws, placed a premium on
exhaustion of agency remedies. In many cases, if there has been no such exhaustion by taking an
appeal to the Board of Immigration Appeals, a court would not consider the petitioner's
claims."). Counsel was therefore not ineffective in failing to make a doomed argument.

B.      Trial Counsel's Failure to Move to Correct the Amended Judgment

The petitioner claims that trial counsel provided ineffective assistance by failing to move the Court to clarify its judgment to reflect the Court's intention that the "petitioner's sentence should run concurrent[ly] 'with the sentence imposed in Suffolk [C]ourt Docket # 93-11098 . . . .'" (Mot. Pursuant to 28 U.S.C. § 2255, at 6.) The clarification that the petitioner seeks is, in fact, the exact language used by the Court in its amended judgment:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: 70 month(s)[.] This *sentence is to run concurrently with the sentence imposed in Suffolk Superior Court Docket #93-11098*, currently being served at the Massachusetts Correctional Institution and Cedar Junction.

United States v. Pimental, No. 06-10059, at 2 (Amended Judgment) (emphasis added). This is consistent with the Court's oral pronouncement of the sentence:

> In this case, however, I think I will agree to the defendant's request that it be made concurrent and not follow the policy advice of the guidelines . . . .
>
> . . . [I]t is the judgment of the Court that you be and you hereby are committed to the custody of the Bureau of Prisons to be imprisoned for a term of 70 months. *This sentence shall run concurrently with the balance of the state sentence you are presently serving.* In other words, the computation of the sentence will be effective immediately.

(Gov't's Resp. to Pet'r's § 2255 Mot. and Request for Summ. Dismissal Ex. 3, at 17–18) (emphasis added).

The petitioner also claims that counsel should have noticed that the amended judgment did not mention United States Sentencing Guidelines § 5G1.3 and should have moved to correct it. The gist of the petitioner's claim appears to be that he believes the effective date of his sentence should have been the date of his indictment, March 1, 2006, rather than the date of sentencing, August 31, 2006. Section 5G1.3 gives the sentencing court discretion to run a defendant's sentence concurrently or consecutively to an undischarged term of imprisonment. It

does not address the date on which a concurrent sentence such as the petitioner received is to

begin. The Court explained at sentencing that the sentence would be made concurrent because

> in this case it may be different from a typical case in that under the circumstances, there will be no credit against federal time that might otherwise have occurred if a person had simply been apprehended and held in federal custody. And I think that if Mr. Pimental had been apprehended -- well, I guess the date here is October 5th, '05, he was actually in state custody July, I think, of '05. If you use July as the time, he's been in custody [] a little over a year. There's about a little over a year of concurrent time. It's not an exact match either theoretically or mathematically but I think it's close enough to reflect a little bit of a difference from the normal case where the guideline sentence would be credited with the time he's been in custody heretofore. So I think rather than impose a nonguideline sentence which makes the deduction, I think the way of doing it is simply to make it concurrent with the existing sentence.

(Id. at 17–18.)  The petitioner's claim that "counsel should have noticed that [the amended

judgment] did not include the provisions of U.S.S.G. § 5G1.3, that would have adjusted the

sentence to reflect the Court's intention, or in the alternative show an effective date for which the

sentences to run concurrently," (Mot. Pursuant to 28 U.S.C. § 2255, at 5), appears to be an

attempt to make his sentence concurrent to the state court sentence *and* be given credit toward

his federal sentence for the time he was serving on that state court sentence after being indicted

on the federal offense. As is made clear by the sentencing transcript, that is not what the Court

intended. Title 18 U.S.C. § 3585(b) provides that

> [b] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *that has not been credited against another sentence*.

18 U.S.C. § 3585 (emphasis added). Because the petitioner's time in custody on the state prison

sentence prior to the imposition of his federal sentence was "credited against another sentence"

(the state sentence), it would not reduce the time to be served on his federal sentence. The amended judgment correctly reflects the oral sentence imposed and the Court's intention that it be made concurrent in light of the fact that Pimental could not receive credit toward the federal sentence for the time he had already served on his state sentence. There being no error in the amended judgment, counsel was not ineffective for failing to suggest one.

      C.      Failure to Argue "Fast-Track Disparity"

The petitioner argues that counsel should have argued for a lower sentence based on the fact that this district does not utilize a "fast-track" program, which speeds up criminal immigration cases and allows for downward departures in exchange for the waiver of procedural rights. See United States v. Martinez-Flores, 428 F.3d 22, 24 (1st Cir. 2005). Such downward departures were authorized by Congress when it enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108–21, 117 Stat. 650 (2003) (codified in scattered sections of 18, 28, and 42 U.S.C.). A sentencing court considers several factors when imposing a sentence, see 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." 18 U.S.C. § 3553(a)(6). By highlighting the disparity between Pimental and defendants in "fast-track" districts engendered by the latter's eligibility for a downward departure, the petitioner suggests that a lower sentence could have been obtained if counsel had argued the point.

The state of the law on August 31, 2006 does not support this claim, however, because the decisions of several courts of appeal, including the First Circuit, would have almost certainly led this Court to conclude that it could not take cognizance of fast-track disparity, or that if it could, it would not justify a lower sentence.

In <u>Martinez-Flores</u>, 428 F.3d at 29, a defendant who was sentenced according to the then-mandatory Guidelines had argued to the district court that fast-track disparity was a "'mitigating circumstance'" that was "'not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines.'" <u>Id.</u> (quoting 18 U.S.C. § 3553(b)(1)). On direct appeal, after the Supreme Court's holding in <u>United States v. Booker</u>, 543 U.S. 220, 245 (2005), excised § 3553(b)(1) from the statute and made the guidelines non-mandatory, he argued that fast-track disparity was an "unwarranted sentence disparit[y]" under § 3553(a)(6), and requested a <u>Booker</u> remand so that the district court could consider the issue. <u>Martinez-Flores</u>, 428 F.3d at 29. Because the defendant did not preserve a <u>Booker</u> issue, the court reviewed for plain error, and found that he had not shown "'a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new "advisory Guidelines" Booker Regime,'" <u>id.</u> (quoting <u>United States v. Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir. 2005), because he could point to no "'specific indicia' that the district court would have felt differently had it been operating under advisory Guidelines." <u>Id.</u> at 29–30 (quoting <u>United States v. Sanchez-Berrios</u>, 424 F.3d 65, 80 (1st Cir. 2005). The court opined that the district court's remark that it was "not free to simply give every other defendant who comes before me the benefit of the [fast-track] program *that might have some pragmatic justification in particular districts but is not justified here*," indicated it would not have deemed any fast-track disparity to be unwarranted. <u>Id.</u> at 30. In a footnote, the court added that "[i]t is arguable that even post-<u>Booker</u>, it would never be reasonable to depart downward based on disparities between fast-track and non-fast track jurisdictions given Congress' clear (if implied) statement in the PROTECT Act provision that such disparities are acceptable." <u>Id.</u> at 30 n.3.

In a March 9, 2006 en banc decision, the First Circuit encountered the argument that fast-track disparity was an "unwanted sentencing disparity" under § 3553(a)(6) and noted that "[t]his certainly permits disparities but they are the result of congressional choice made for prudential reasons, implicitly qualifying the general aim of equality." United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc). The court suggested that "[t]he impact is probably more modest than the decision of a United States Attorney, in a district with a heavy case load, to forgo entirely some prosecutions that would routinely be brought in other districts," and noted that "[w]hether it would even be permissible to give a lower sentence on the ground sought is itself an open question." Id. The court did not have to decide the issue, however, as it agreed with the district court that the defendant had not furnished a factual basis for assessing the extent of any disparity or provided a reason to take it into account. Id. Nevertheless, the court's comments in Jiménez-Beltre, as in Martinez-Flores, strongly suggested that disparity resulting from other districts' fast-track programs either was not an "unwarranted" disparity or was so minimally "unwarranted" as to be immaterial.[1]

All other circuits that had considered the issue at the time of Pimental's sentencing had held that fast-track disparity was not "unwarranted," and a court's failure to adjust a sentence to account for it did not render a sentence unreasonable. See United States v. Mejia, 461 F.3d 158, 163 (2d Cir. 2006); United States v. Aguirre-Villa, 460 F.3d 681, 683 (5th Cir. 2006); United States v. Castro, 455 F.3d 1249, 1252 (11th Cir. 2006); United States v. Hernandez-Fierros, 453 F.3d 309, 314 (6th Cir. 2006); United States v. Perez-Pena, 453 F.3d 236, 243–44 (4th Cir. 2006); United States v. Marcial-Santiago, 447 F.3d 715, 719 (9th Cir. 2006); United States v.

---

[1] Later, in United States v. Montero-Diaz, 173 Fed. Appx. 7, 10 (1st Cir. 2006), the First Circuit rejected an argument that a defendant's counsel was ineffective in failing to argue for a downward departure in light of the fast-track disparity. The court cited its comments in Martinez-Flores and Jiménez-Beltre. Id.

Martinez-Martinez, 442 F.3d 539, 542 (7th Cir. 2006); United States v. Sebastian, 436 F.3d 913, 916 (8th Cir. 2006).

In 2007, the First Circuit confronted the issue directly and agreed with these other circuits, see United States v. Andújar-Arias, 507 F.3d 734, 739 (1st Cir. 2007) ("[T]he disparities resulting from fast-track programs, whether a product of downward departures or charge-bargaining programs, are 'warranted' and may not be considered by a district judge in sentencing as a basis for a variance from a Guidelines sentence pursuant to § 3553(a)(6)."), but then changed course in 2008 after the Supreme Court's decisions in Gall v. United States, 552 U.S. 38 (2007), and Kimbrough v. United States, 552 U.S. 85 (2007). See United States v. Rodríguez, 527 F.3d 221, 225–29 (1st Cir. 2008).

In Rodríguez, the First Circuit explained that Gall and Kimbrough "called into question a number of our earlier decisions by emphasizing the breadth of a district court's discretion to deviate from a defendant's GSR based on the compendium of sentencing factors mentioned in 18 U.S.C. § 3553(a)." Id. at 225. The court held that "consideration of fast-track disparity is not categorically barred as a sentence-evaluating datum within the overall ambit of 18 U.S.C. § 3553(a)," abrogating its previous decision in Andújar-Arias. Id. at 225, 229. The court added that its holding was "carefully circumscribed" because "although sentencing courts can consider items such as fast-track disparity, they are not obligated to deviate from the guidelines based on those items." Id. at 231.

Given the state of the law at the time of sentencing on August 31, 2006, this Court would have followed the reasoning of all of the circuit courts who had addressed the issue, as well as the suggestions by the First Circuit in Jiménez-Beltre and Martinez-Flores, and rejected the argument that the petitioner now claims counsel should have made. And, as it turned out, that

interpretation would have correctly anticipated the <u>Andújar-Arias</u> decision that later settled the question in this circuit for a short time, until <u>Gall</u> and <u>Kimbrough</u>. <u>See</u> 507 F.3d at 739.

Because the Court would likely have rejected the argument that fast-track disparity was "unwarranted" under § 3553(a)(6), counsel did not perform deficiently in failing to raise the issue. <u>See</u> <u>United States v. Woodard</u>, 291 F.3d 95, 108 (1st Cir. 2002) ("An attorney is not obligated to pursue weak options 'when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial.'") (quoting <u>Tuitt v. Fair</u>, 822 F.2d 166, 172 (1st Cir. 1987)). For the same reason, the prejudice inquiry under <u>Strickland</u> is not satisfied. To the extent that petitioner suggests counsel should have interpreted <u>Booker</u> so as to predict <u>Gall</u> and <u>Kimbrough</u>, and in turn to predict <u>Rodríguez</u>, counsel is not required to be more prescient in predicting the course of the law than the First Circuit itself, which, as indicated by its decision in <u>Andújar-Arias</u>, plainly did not foresee what the petitioner suggests his counsel should have.

    D.    <u>Ineffective Assistance of Appellate Counsel</u>

The petitioner claims that his appellate counsel was constitutionally ineffective because she abandoned him during his appeal. As described above, appellate counsel filed an <u>Anders</u> brief on June 7, 2007 seeking to withdraw from the case because no non-frivolous appealable issues existed. In <u>Anders</u>, the Supreme Court explained that:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. *Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.* That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court -- not counsel -- then proceeds, after a full examination of all the proceedings, to

decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires.

386 U.S. at 744 (footnote omitted) (emphasis added). Similarly, Rule 46.6(c)(4) of the First Circuit Local Rules provide for counsel's withdrawal because of "the frivolousness of the appeal," by filing "a brief following the procedure described in Anders v. California, 386 U.S. 738 (1967) . . . . " On August 28, 2007, the First Circuit allowed counsel to withdraw and summarily affirmed the judgment against Pimental.

On June 21, 2007, the Supreme Court decided Rita v. United States, 551 U.S. 338 (2007). Pimental argues that "[c]ounsel failed to notice the new direction of the United States Supreme Court and did not file a supplement to her Anders brief." (Mot. Pursuant to 28 U.S.C. § 2255, at 9.) In Rita, the Supreme Court held that federal courts of appeal, when reviewing federal sentences for reasonableness, could presume that a sentence within the Guideline range is reasonable. 551 U.S. at 341. Rita did not create a new non-frivolous issue which Pimental could have raised on appeal. Accordingly, counsel was not ineffective for not supplementing her Anders brief during the period after it had been filed but before it had been ruled on by the court of appeals.[2]

Pimental also argues that appellate counsel "was obligated to file a Certiorari petition to the Supreme Court . . . on the fact that the question in Kimbrough was one of significant importance to [him]." (Mot. Pursuant to 28 U.S.C. § 2255, at 9–10.) The argument ignores the fact that appellate counsel succeeded in withdrawing as Pimental's counsel prior to the issuance

---

[2] Because Rita dealt with an issue directly affecting the courts of appeals, the likelihood that the First Circuit panel was aware of the case and its holding at the time it disposed of Pimental's appeal is overwhelming. Accordingly, even if appellate counsel's performance were deficient in this respect, there is no reason to think the omission to cite a recent case with which the court of appeals was probably already familiar could have resulted in actual prejudice to Pimental.

of the appellate mandate and was thus relieved of further obligations in connection with the matter.

**III.**     **Conclusion**

For the foregoing reasons, the petitioner's motion to vacate under 28 U.S.C. § 2255 (dkt. no. 24) is DENIED.

It is SO ORDERED.


        /s/ George A. O'Toole, Jr.
United States District Judge